**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MARANIE RAE STAAB,

Plaintiff,

-against-

THE CITY OF ROCHESTER, "JOHN DOE POLICE
OFFICERS 1-200" (names and number of whom are
unknown at present), COUNTY OF MONROE, TODD
BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200"
(names and number of whom are unknown at present), and
other unidentified members of the Rochester Police
Department and Monroe County Sheriff's Office,

Defendants.

22-cv-6063 (FPG)

**MEMORANDUM OF LAW IN OPPOSITION**
**TO THE CITY DEFENDANTS' PARTIAL MOTIONS TO DISMISS**

**Elliot D. Shields, Esq.**
**ROTH & ROTH, LLP**
**192 Lexington Avenue, Suite 802**
**New York, New York 10016**
**(212) 425-1020**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL STANDARDS ....................................................................................................... 4

    I.    MOTION TO DISMISS ..................................................................................... 4

    II.   *MONELL* LIABILITY .......................................................................................... 8

ARGUMENT ....................................................................................................................... 9

    I.    THE CITY CANNOT INTRODUCE EXTRA PLEADING MATERIALS TO CONTRADICT THE FACTS PLED IN THE FAC................................................... 9

    II.   PLAINTIFF'S MUNICIPAL LIABILITY CLAIM—THE TENTH CLAIM FOR RELIEF—IS WELL PLED (RESPONDING TO POINT V OF THE CITY'S BRIEF) ......... 10

    III.  PLAINTIFF'S THIRD CLAIM FOR RELIEF IS PROPERLY PLED UNDER TWO THEORIES—FIRST AMENDMENT RETALIATION AND VIEWPOINT DISCRIMINATION (RESPONDING TO POINT I OF THE CITY'S BRIEF)..................... 14

        A.    Plaintiff's First Amendment Retaliation Claim is Well Pled........................................ 14

        B.    The FAC Pleads That Defendants' Response to the Protests Was More Violent Because of the Message They Were Expressing and Thus States First Amendment Viewpoint Discrimination Claim. ........................................................................... 18

    IV.  THE CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS MERITLESS, AND SO THE FOURTH CLAIM FOR RELIEF MUST PROCEED TO DISCOVERY. ...................................................................... 19

    **V.    THE CITY DOES NOT MOVE TO DISMISS THE NEGLIGENT PLANNING CLAIM—THE EIGHTH CLAIM FOR RELIEF—WHICH IS ADEQUATELY PLED UNDER *FERREIRA* V. *CITY OF BINGHAMTON*, 2022 NY SLIP OP 01953 (MAR. 23, 2022).** ...................................................................................................................... 20

    **VI.  THE NEGLIGENCE CLAIM AGAINST THE INDIVIDUAL OFFICERS—THE ELEVENTH CLAIM FOR RELIEF—IS ADEQUATELY PLED (RESPONDING TO POINT IV OF THE CITY'S BRIEF)** ............................................................................. 23

CONCLUSION................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abay v. City of Denver*,
    445 F. Supp. 3d 1286 (D. Colo. 2020) ...................................................................................11

*Alsaada* v. *City of Columbus*,
    536 F. Supp. 3d 216 (S.D. Ohio 2021), *modified sub nom. Alsaada* v. *City of
    Columbus, Ohio*, No. 2:20-CV-3431, 2021 WL 3375834 (S.D. Ohio June 25,
    2021) ......................................................................................................................................11

*Anderson News, LLC* v. *Branen*,
    17 F.3d 552 (2d Cir. 1994) .................................................................................................. 19

*Anderson News, LLC* v. *Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012) ...................................................................................................5

*Anti Police-Terror Project v. City of Oakland*,
    477 F.Supp.3d 1066 (N.D. Cal. 2020) ..................................................................................11

*Applewhite v Accuhealth, Inc.*,
    995 N.E.2d 131 (2013) ..........................................................................................................20

*Arista Records, LLC* v. *Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ...............................................................................................5, 7

*Bd. of Cnty. Comm'rs v. Brown*,
    520 U.S. 397 (1997) ..............................................................................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555, 570 (2007) ........................................................................................... 4-5

*Black Lives Matter Seattle-King Cnty.* v. *City of Seattle, Seattle Police Dep't*,
    466 F. Supp. 3d 1206 (W.D. Wash. 2020) ......................................................................11, 18

*City of Amsterdam* v. *Daniel Goldreyer, Ltd.*,
    882 F Supp. 1273 (E.D.N.Y. 1995) .........................................................................................9

*City of Canton* v. *Harris*,
    489 U.S. 378 (1989) ..........................................................................................................12, 14

*Colon* v. *City of Rochester*,
    419 F. Supp. 3d 586 (W.D.N.Y. 2019) ............................................................................. 9-10

*Cox* v. *Louisiana*,
  379 U.S. 536 (1965)................................................................................................17

*Doe v. Columbia Univ*,
  831 F.3d 46, 48 (2d Cir. 2016)............................................................................5, 7

*Don't Shoot Portland* v. *City of Portland*,
  465 F.Supp.3d 1150 (D. Or. 2020) ...................................................................11, 18

*Dorsett v. Cnty. of Nassau*,
  732 F.3d 157 (2d Cir. 2013)....................................................................................15

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
  282 F.3d 83 (2d Cir. 2002).........................................................................................7

*Downes-Covington* v. *Las Vegas Metro. Police Dep't*,
  No. 220CV01790GMNDJA, 2020 WL 7408725 (D. Nev. Dec. 17, 2020)............11

*Ferreira v. City of Binghamton*,
  2022 NY Slip Op 01953 at *5-6 (Mar. 23, 2022). ........................................... 20-23

*Gregory v. Daly*,
  243 F.3d 687, 701 n. 12 (2d Cir. 2001)....................................................................7

*Hines v. Albany Police Dep't*,
  520 Fed.Appx. 5 (2d Cir. 2013)................................................................................8

*Jenkins v. City of N.Y.*,
  478 F.3d 76 (2d Cir. 2007).................................................................................9, 14

*Keiler v. Harlequin Enters. Ltd.*,
  751 F.3d 64 (2d Cir. 2014).........................................................................................7

*Matusick v. Erie Cnty. Water Auth.*,
  757 F.3d 31 (2d Cir. 2014).........................................................................................8

*McCummings v. New York City Transit Auth.*,
  81 N.Y.2d 923, 926 (1993) ......................................................................................25

*McMillian v. Monroe Cty.*,
  520 U.S. 781, 784 (1997)...........................................................................................8

*Missel v. County of Monroe*,
  351 Fed.Appx. 543 (2d Cir. 2009) ...........................................................................8

*Monell* v. *Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)...............................................................................................8-9

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
No. 20-cv-8924 (CM)(GWG), 2021 U.S. Dist. LEXIS 128437 (S.D.N.Y. July
9, 2021) ............................................................................................................9, 14

*Parker v. City of Long Beach*,
563 Fed.Appx. 39 (2d Cir. 2014), *as amended* (Apr. 21, 2014) ...............................8

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) ..............................................................................................12

*Roth* v. *Jennings*,
489 F.3d 499 (2d Cir.2007) ...................................................................................10

*Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*,
563 F. App'x 851 (2d Cir. 2014) .............................................................................7

*Schnitter v. City of Rochester*,
556 Fed.Appx. 5, 2014 WL 494893 (2d Cir. 2014)..................................................8

*Smullen* v *City of New York*,
28 NY2d 66 (1971) ........................................................................................... 20-21

*Torraco* v. *Port Auth. of N.Y. & N.J.*,
615 F.3d 129 (2d Cir. 2010)....................................................................................8

*Vives* v. *City of N.Y.*,
524 F.3d 346 (2d Cir. 2008)...................................................................................12

*Walker v. City of N.Y.*,
974 F.2d 293 (2d Cir. 1992)................................................................................9, 14

*Yang* v. *Hardin*,
37 F.3d 282 (7th Cir. 1994) ...................................................................................19

## Statutes

42 U.S.C. § 1983 ......................................................................................... *passim*

## Rules

Fed. R. Civ. P. 8(d)(2)......................................................................................13, 22

Fed. R. Civ. P. 8(d)(3)..............................................................................................7

Rule 12(b)(6)......................................................................................................... 4-7

**Constitutions**

U.S. Const. amend. I ................................................................................................... *passim*


**Other Authorities**

Lauren Bonds, Robert Rickner and Elliot Shields, Brief of Amicus Curaie the New
    York County Lawyers Association and National Police Accountability Project
    *Ferreira* v. *City of Binghamton*, CTQ 2020-00007, available at:
    https://www.nycla.org/pdf/FerreiravBinghampton-NYCLA-amicus-amicusbrf.pdf  .............21

Sophie Kasakove, *Colorado Jury Awards $14 Million to Demonstrators Injured in George Floyd
Protests*, New York Times (Mar. 26, 2022), https://www.nytimes.com/2022/03/26/us/denver-
george-floyd-protests-ruling.html ……………………………………………………………..8

## PRELIMINARY STATEMENT

Plaintiff Maranie Rae Staab is a photojournalist based in Portland, Oregon who came to Rochester to document the police response to peaceful protests. Ms. Staab's case presents important constitutional questions about the rights of the press to document and record the law enforcement response to racial justice protests.

The City defendants' partial motion to dismiss demonstrates that they do not take this case seriously. The motion was sloppily copied and pasted from motions filed in other cases and does not tailor any of its arguments to the facts pled in Ms. Stabb's First Amended Complaint ("FAC").

Moreover, the City does not argue that the FAC is not adequately pled. Instead, in their partial motion to dismiss, the City defendants improperly attempt to introduce news articles and other extra-pleading materials to present an alternative set of facts to the Court, which contradict the facts pled in the FAC, to support their outrageous argument that because the protests allegedly were not "peaceful", their policy of using extreme violence to suppress the protests was justified. However, this argument supports Plaintiff's municipal liability claim. Specifically, the FAC alleges that "policymaking officials at the highest levels subscribed to the theory that Black Lives Matter protests are led by a nationwide conspiracy of outside agitators bent on violence" and that "there is no such thing as a peaceful protestor." FAC ¶¶ 62-63. The FAC pleads that this incorrect view led to the City and RPD to train and/or permit their officers to respond to protests with extreme and unnecessary violence, based on the message protesters were expressing, *i.e.,* their objections to police racism and violence against Black and brown people. *Id*. ¶¶ 62-64. The City's memorandum confirms that that is still the City's official position and demonstrates that Plaintiff's municipal liability claim is well pled.

In their partial motion to dismiss, the City defendants only move to dismiss a portion of the "First Amendment Claim" (the Third Claim for Relief); the "Fourteenth Amendment Claim"

(plaintiff did not plead a "Fourteenth Amendment Claim"); the "Failure to Intervene Claim" (the Fourth Claim for Relief); the "Negligence Claim" (the Ninth Claim for Relief); the "Monell Claim" (the Eleventh Claim for Relief); and the "Negligent Training Claim" (the Seventh Claim for Relief)[1].

The City did not move to dismiss the First Claim for Relief for "Assault and Battery; the Second Claim for Relief for "Excessive Force"; the portion of the Third Claim for Relief for "First Amendment Retaliation,"; or the Eighth Claim for Relief for "Negligent Planning of the Protest Response".

Because all these claims are sufficiently pled, and because the City fails to demonstrate any insufficiencies in the FAC, the City's partial motion to dismiss should be denied in its entirety.

## STATEMENT OF RELEVANT FACTS

Ms. Staab is a professional photojournalist who traveled from Portland, Oregano to Rochester to document the protests. FAC ¶ 17. On the nights of September 4-5 and 5-6, 2020, as she was documenting the protests, RPD officers and Sheriff's Deputies targeted her and retaliated against her by attacking her with pepper balls and other "less lethal" munitions for photographing and documenting their violent response to the protests. *Id*. ¶ 19.

The FAC pleads that on the night of September 4, 2020, RPD officers and Sheriff's Deputies erected metal barricades to close the Court Street Bridge to vehicular and pedestrian traffic, then used the bridge to "kettle" and attack hundreds of protesters, including Mr. FITZGERALD. *Id*. ¶¶ 26-27. Specifically:

- Police escorted Mr. FITZGERALD and hundreds of other protesters onto the bridge, stopped them with metal barricades, then issued dispersal orders that were unclear. *Id*. ¶ 29.

---

[1] Because the City stipulated that all officers were acting within the scope of their employment, Plaintiff agrees to dismissal of this claim.

- Ms. Staab and other journalists were positioned on the sidewalk towards the front of the crowd of protesters, nearest to the barricades that had been erected by law enforcement prior to them escorting protesters onto the bridge. *Id*. ¶ 28.

- "Suddenly, without giving the protesters the time or opportunity to disperse—*and knowing it was physically impossible for them to comply with the dispersal orders*—law enforcement officers began violently attacking protesters. In fact, the RPD Officers began indiscriminately firing pepper balls into the crowd less than 30 seconds after the first "dispersal" order was issued at approximately 10:43 p.m." *Id*. ¶ 30.

- "Ms. STAAB was present near the "front line" of protesters, on the sidewalk on the south side of the bridge, and it was physically impossible for her to immediately comply and disperse from the bridge." *Id*. ¶ 31.

- Ms. Staab was shot with one or more pepperballs, subjected to large amounts of teargas, and then was violently pushed and shoved by law enforcement while she was present on the sidewalk photographing and documenting the law enforcement officers' response to the protesters. *Id*. ¶¶ 32-35.

- Thereafter, "[a]t approximately 12:00 a.m., while she was standing alone on the sidewalk documenting the RPD officers and/or Sheriff's Deputies respond to the peaceful protesters in the vicinity of the Court Street Parking Garage, Ms. STAAB was shot multiple times with pepper balls by one or more RPD officers and/or Sheriff's Deputies." *Id*. ¶ 29.

The FAC pleads that on the night of September 5-6, 2020, Ms. Staab was again targeted and attacked while she was photographing and documenting the law enforcement response to the protests. Specifically:

- Law enforcement escorted protesters to the intersection of Broad Street and Exchange Boulevard, which they had closed to vehicular traffic by erecting barricades, and by stationing an overwhelming amount of officers in full riot geat with military grade weapons—including a bearcat tank—and police dogs *Id*. ¶¶ 44-49.
- After trapping protesters at the intersection, RPD officers and Sheriff's Deputies attacked protesters with pepper balls, tear gas and flash bang grenades. *Id*. ¶ 49.

- Ms. Stabb was again targeted and retaliated against by officers. In a video incorporated into the FAC, Ms. Stabb documents RPD officers and/or Sheriff's Deputies attack several protesters as they attempted to help an injured person to their feet—first, the officers shoot pepper balls, spray chemical weapons, and throw a tear gas cannister at them from behind the barricades; then they rush through the barricades and kick and shove the protesters; then when the officers realize Ms.

Staab is recording them, then turn towards her and spray her with chemical weapons, and then throw some sort of cannister at her, apparently in retaliation for filming them: https://www.instagram.com/p/CEzSnUTD_1h/ *Id*. ¶ 52

- "Thereafter, again pursuant to policy, between approximately 11:00-11:30 p.m., in the vicinity of Main Street and Exchange Blvd., near the front entrance to the Telesca Center, RPD officers and/or Sheriff's Deputies targeted and shot Ms. STAAB numerous times with pepper balls and was struck in the right knee with a tear gas cannister or other "less-than-lethal" projectile." *Id*. ¶ 55.

- "As a result of being struck in the right knee with a tear gas cannister or other projectile, Ms. STAAB sustained serious injuries which required hospitalization." *Id*. ¶ 59

The FAC pleads that Ms. Staab was attacked pursuant to the protest response plan that was developed by City and County officials in the months prior to the September 2020 protests. *Id*. ¶¶ 64-67. Pursuant to that plan, RPD officers were ordered to suppress the protests and target jounalists and others who were documenting the law enforcement response to the protests, like Ms. Staab. *Id*. ¶¶ 66–67. RPD officers were given military-grade equipment and authority to spray and gas indiscriminately, aim high with pepper balls and KIPS, and inflict pain as a deterrent. *See, e.g., id*. ¶¶ 66-71. The widespread use of pepper spray, pepper-balls, tear gas, and other types of "less lethal" weapons belies any claim that individual officers were acting on their own rather than implementing a preconceived municipal plan. At all times on September 4-5 and 5-6, 2020, the RPD officers and Sheriff's Deputies were executing the unlawful protest response plan, which was the direct and proximate cause of Ms. Staab's injuries. *Id*. ¶ 70.

## LEGAL STANDARDS

### I.   MOTION TO DISMISS

A Rule 12(b)(6) motion must be denied if the complaint includes "enough facts to state a claim to relief that is plausible on its face;" that is, enough factual allegations, taken as true, "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555, 570 (2007); see also *Arista Records, LLC v. Doe* 3, 604 F.3d 110, 120 (2d Cir. 2010). "[I]n determining whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true,' [e]ven if their truth seems doubtful." *Anderson News, LLC v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). "Given that the plausibility requirement 'does not impose a probability requirement at the pleading stage . . . a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

"Before assessing the sufficiency of the complaint, the Court must determine which sources of information beyond the complaint, if any, should be considered." *Gersbacher* v. *City of New York*, 134 F Supp 3d 711, 717 (S.D.N.Y. 2015). Generally, "[o]n a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive." *Doe* v. *Columbia Univ*., 831 F.3d 46, 48 (2d Cir. 2016); *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010); *McCarthy* v. *Dun & Bradstreet*, 482 F.3d 184, 191 (2nd Cir. 2007). However, the court may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference, [which] are deemed part of the pleading," and may also consider "a document 'upon which [the complaint] solely relies and which is integral to the complaint.'" *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir.2007), *quoting Cortec Industries, Inc*. v. *Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); see also Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)("A complaint is deemed to include … documents that, although not incorporated by reference, are 'integral' to the

complaint."). "Courts may also properly consider matters of which judicial notice may be taken." *Halebian* v. *Berv*, 644 F.3d 122, 131 (2d Cir.2011) (internal quotation marks omitted).

When the Court does properly consider materials outside the pleadings in a Rule 12 motion, such documents may only be considered "to determine what statements they contained ... not for the truth of the matters asserted," *Roth* v. *Jennings*, 489 F.3d at 509, and so "Defendants cannot use these [documents] to verify or disprove any disputed substantive issues in this action." *City of Amsterdam* v. *Daniel Goldreyer, Ltd*., 882 F Supp. 1273, 1279 (E.D.N.Y. 1995).

Ordinarily, however, when extra-pleading material is submitted on a Rule 12 motion and the Court does not exclude such evidence, Rule 12(d) requires that, "the motion must be treated as one for summary judgment under Rule 56," and that, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. PRO. 12(d). "This conversion requirement is strictly enforced whenever a district court considers extra-pleading material in ruling on a motion to dismiss." *Chambers* v. *Time Warner, Inc*., 282 F.3d 147, 154 (2d Cir. 2002)(quotations and citation omitted); *see also Garanti Finansal Kiralama A.S.* v. *Aqua Mar. and Trading Inc*., 697 F3d 59, 74 (2d Cir. 2012)(Reversing district court's dismissal of plaintiff's complaint where, "[a]lthough it was based on the pleadings alone, the district court's dismissal [could not] be construed as a Fed. R. Civ. 12(c) dismissal because it considered matters outside the pleadings, specifically, the affidavits and exhibits [defendant] had submitted.").

The Supreme Court recently reiterated the "importance of drawing inferences in favor of the nonmovant" when considering a motion for summary judgment and emphasized that "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan* v. *Cotton*, 134 S. Ct. 1861, 1866 (2014). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving

party is entitled to judgment as a matter of law." *Miller* v. *Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2004). These principles, of course, apply a fortiori in adjudicating Rule 12 motions, where all of discovery has not even taken place and all of the facts are in dispute. *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F3d 184, 191 (2d Cir 2007) ("In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.").

The Court must construe the complaint liberally and accept all facts alleged on information and belief when they are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista*, 604 F.3d at 120 (citations omitted); see also *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 71 (2d Cir. 2014). Direct evidence of a defendant's intent, motive, or knowledge is rarely available to plaintiffs before discovery, and "[i]t is sufficient to allege facts from which [the relevant mental state] on the part of the defendants reasonably may be inferred." *Safepath Sys. LLC v. N.Y.C. Dep't of Educ.*, 563 F. App'x 851, 857 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Dougherty* v. *Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002)).

"Furthermore, the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint." *Doe* v. *Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016), *citing* FED. R. CIV. P. 8(d)(3) ("A party may state as many separate claims ... as it has, regardless of consistency."); *Gregory v. Daly*, 243 F.3d 687, 701 n. 12 (2d Cir. 2001).

## II.    *MONELL* LIABILITY

"[A] local government is liable under § 1983 for its policies that cause constitutional torts."

*McMillian* v. *Monroe Cty.*, 520 U.S. 781, 784 (1997); *see Monell* v. *Dep't of Soc. Servs.*, 436 U.S.

658, 693 (1978). "To hold a city liable under § 1983 for the unconstitutional actions of its

employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom

that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco* v. *Port*

*Auth. of N.Y. & N.J.,* 615 F.3d 129, 140 (2d Cir. 2010) (internal quotation marks omitted).

A plaintiff may satisfy the "policy or custom" requirement by alleging (1) a formal policy

officially endorsed by the municipality; (2) actions taken by government officials responsible for

establishing the municipal policies that caused the particular deprivation in question; (3) a practice

so consistent and widespread that, although not expressly authorized, constitutes a custom or usage

of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to

provide adequate training or supervision to subordinates to such an extent that it amounts to

deliberate indifference to the rights of those who come into contact with the municipal employees.

*See Parker v. City of Long Beach*, 563 Fed.Appx. 39, 41 (2d Cir. 2014), *as amended,* (Apr. 21,

2014) (failure to train); *Matusick v. Erie Cnty. Water Auth*., 757 F.3d 31, 61–62 (2d Cir. 2014)

(persistent and widespread practice); *Hines v. Albany Police Dep't*, 520 Fed.Appx. 5, 7 (2d Cir.

2013) (actions of policymakers); *Schnitter v. City of Rochester*, 556 Fed.Appx. 5, 8, 2014 WL

494893, at *2 (2d Cir. 2014) (failure to train or supervise); *Missel v. County of Monroe*, 351

Fed.Appx. 543, 545 (2d Cir. 2009) (formal policy and act of a person with policymaking authority

for the municipality).

"[A] complaint alleging deliberate indifference must plead some facts that, if proven,

would tend to show that (1) a policymaker knows to a moral certainty that employees will confront

a given situation; (2) the situation either presents the employee with a difficult choice of the sort

that training or supervision will make less difficult or that there is a history of employees mishandling the situation and (3) the wrong choice will frequently cause the deprivation of citizens' constitutional rights." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20-cv-8924 (CM)(GWG), 2021 U.S. Dist. LEXIS 128437 at *33-34 (S.D.N.Y. July 9, 2021); (quotations omitted) (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007) quoting *Walker v. City of N.Y.*, 974 F.2d 293, 297 (2d Cir. 1992)).

## ARGUMENT

### I.    THE CITY CANNOT INTRODUCE EXTRA PLEADING MATERIALS TO CONTRADICT THE FACTS PLED IN THE FAC.

The City is the proponent of the instant motion and they had complete discretion to choose the procedural basis on which they would choose to proceed. With this in mind, it is significant that their Memorandum, in what they style to be a motion on the pleadings, only references the FAC in passing and does not argue any fatal deficiency in the FAC. Instead, the City's Memorandum is squarely focused on Defendants' analysis of alleged contradictions between the facts pled in the FAC and news articles regarding other individuals that have nothing to do with the actions of the RPD on the nights of September 4-5 and 5-6, 2020, when RPD Officers attacked Ms. Staab and retaliated against her for documenting and recording their response to the protests.

Defendants cannot introduce these extra-pleading materials to contradict the facts pled in the FAC on this Rule 12 motion. It is clearly established in the Second Circuit that when extra-pleading materials are considered in ruling on a Rule 12 motion, such documents may only be considered "to determine what statements they contained ... not for the truth of the matters asserted," *Roth* v. *Jennings*, 489 F.3d 499, 510 (2d Cir.2007), and thus "Defendants cannot use these [documents] to verify or disprove any disputed substantive issues in this action." *City of Amsterdam* v. *Daniel Goldreyer, Ltd.*, 882 F Supp. 1273, 1279 (E.D.N.Y. 1995); see also *Colon*

9

v. *City of Rochester*, 419 F. Supp. 3d 586, 595–96 (W.D.N.Y. 2019) (rejecting the City's attempt

to contradict allegations in the complaint with plaintiff's arrest paperwork because the complaint

specifically alleged the police fabricated the allegations in that paperwork).

Instead, the only extra-pleading material that the Court may properly consider is the video

Plaintiff explicitly incorporated by reference into the FAC at footnote 1 in paragraph 52. *Roth* v.

*Jennings*, 489 F.3d 499, 509 (2d Cir.2007) ("[d]ocuments that are attached to the complaint or

incorporated in it by reference, are deemed part of the pleading").

## II.   PLAINTIFF'S MUNICIPAL LIABILITY CLAIM—THE TENTH CLAIM FOR RELIEF—IS WELL PLED (RESPONDING TO POINT V OF THE CITY'S BRIEF)

The City's does not move to dismiss Ms. Staab's municipal liability claim in this case.

Instead, the City sloppily copied and pasted its argument from its brief in *Hall et al.* v. *City et al*,

21-cv-6296, ECF 61-1. However, in Hall, the City did not move to dismiss the municipal liability

claim regarding the protests; instead, they moved to dismiss a completely different municipal

liability claim regarding the City's decades-long practice of using more force and more extreme

against Black and brown people in Rochester.

Specifically, at page 6-7 of their brief in this case, the City claims:

> "Plaintiff have neither identified a municipal policy that directly
> lead to their alleged injuries nor have they identified any
> unconstitutional action by a City official with final decision making
> authority. Plaintiffs attempt to overcome this fact by providing a
> treatise of cherry picked facts and unproven allegations concerning
> policing in Rochester, New York since 1975. However, presenting
> a litany of lawsuits and misconduct cases as proof of a policy or
> custom is legally insufficient to establish a custom or policy.
> "[A]cceptance of [a] 'numbers theory' would effectively eliminate
> the need … to produce hard evidence of a policy or practice" and
> "would eviscerate Monell … [by] allow[ing] § 1983 claims against
> municipalities to reach a jury … as long as the municipality had been
> sued for excessive force in some number of prior cases"); *Carson v.
> Lewis*, 35 F. Supp. 2d 250, 268 (E.D.N.Y. 1999) cited by *Harris v*

*City of Newburgh*, 2017 US Dist LEXIS 159561, at 14 [SDNY 2017}."

This paragraph is copied and pasted verbatim from page 13 of the City's brief in *Hall*, and even includes all the same typos.

The City's memorandum does not advance any argument as to why the *Monell* claim in this case is not sufficiently pled. Thus, the City has failed to meet its burden to demonstrate any fatal deficiency in Plaintiff's pleading, and their motion must be denied for this reason alone.

Nevertheless, Ms. Staab's *Monell* claim in this case is clearly sufficiently pled. In case after case about police violence during the nationwide protests in the wake of George Floyd's murder, courts have repeatedly held that the indiscriminate use of chemical agents and other "less lethal" crowd control tactics—like those used against Ms. Staab and other protesters as alleged in the FAC—violated the First, Fourth and Fourteenth Amendments.[2] Like those cases, the FAC details that the RPD and Monroe County Sheriff's Office ("MCSO") jointly implemented a plan to use chemical and other "less lethal" weapons indiscriminately against protesters, and other unlawful "crowd control" and "dispersal" tactics. The entire thrust of these claims is that the vicious treatment of Ms. Staab and other protesters was motivated by animus to the protesters' message and efforts to secure equal rights for Black and brown people.  FAC ¶¶ 64, 175. That is the only explanation for the extremely excessive and brutal amount of force officers used against Ms. Staab and other protesters, as detailed in the complaint and documented by Ms. Staab. on September 4,

---

[2] *See, e.g.*, Sophie Kasakove, *Colorado Jury Awards $14 Million to Demonstrators Injured in George Floyd Protests*, New York Times (Mar. 26, 2022), https://www.nytimes.com/2022/03/26/us/denver-george-floyd-protests-ruling.html; *In re 2020 Demonstrations*, 2021 U.S. Dist. LEXIS 128437; *Alsaada* v. *City of Columbus*, 536 F. Supp. 3d 216 (S.D. Ohio 2021), *modified sub nom. Alsaada* v. *City of Columbus, Ohio*, No. 2:20-CV-3431, 2021 WL 3375834 (S.D. Ohio June 25, 2021); *Downes-Covington* v. *Las Vegas Metro. Police Dep't*, No. 220CV01790GMNDJA, 2020 WL 7408725 (D. Nev. Dec. 17, 2020); *Anti Police-Terror Project* v. *City of Oakland*, 477 F.Supp.3d 1066, 1086 (N.D. Cal. 2020); *Black Lives Matter Seattle-King Cnty.* v. *City of Seattle, Seattle Police Dep't*, 466 F. Supp. 3d 1206, 1214–15 (W.D. Wash. 2020); *Abay* v. *City of Denver*, 445 F. Supp. 3d 1286, 1291–92 (D. Colo. 2020); *Don't Shoot Portland* v. *City of Portland*, 465 F.Supp.3d 1150 (D. Or. 2020).

2020 immediately after 10:43 p.m. when they shot him in the face from point blank range with a "less lethal" weapon. *See, e.g*., video incorporated in the fac FAC at ¶ 52 (https://www.instagram.com/p/CEzSnUTD_1h/).

The FAC adequately pleads the existence of an affirmative municipal policy. "[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly;" and municipal liability "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986); *see also Vives* v*. City of N.Y.,* 524 F.3d 346, 350 (2d Cir. 2008).

As detailed above, the FAC pleads that RPD officers were ordered to suppress the protests, and those orders came from the official policymakers for the City.  Under *Pembaur,* when a "government's authorized decisionmakers" make "the decision to adopt [a] particular course of action," "it surely represents an act of official government 'policy'" and "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." 475 U.S. at 483. Thus, the City is liable for the unlawful policies adopted by the RPD policymakers.

The natural, inevitable result of the City policies is exactly what transpired: officers complying with official policies on the use of the "less lethal" force caused serious injuries to peaceful protestors, such as Ms. Stabb, who at most engaged in a misdemeanor by obstructing public sidewalks and streets, and in many cases, were doing nothing illegal whatsoever. FAC ¶ 84.

Plaintiff has therefore shown a "direct causal link" between the offending policies and the constitutional deprivations he suffered; in other words, Plaintiff's particular injuries were incurred

*because* of the execution of the unlawful City policies. *See City of Canton* v. *Harris*, 489 U.S. 378, 385 (1989).

Moreover, the FAC pleads that City officials effectively ratified the RPD's violent response. FAC ¶ 72. "[P]roof that a municipality's . . . authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 405 (1997). "Similarly, the conclusion that the action taken or directed by the [municipality's] authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Id.* Nowhere in its brief does the City address these detailed allegations regarding affirmative municipal policies.

Because the City has ignored the FAC's allegations regarding an affirmative municipal policy, they have waived that argument and cannot raise new arguments in reply. Thus, the Court need not even reach the City's arguments on Plaintiffs' alternate theories of municipal liability. *See, e.g., DiPippo* v. *Cty of Putnam*, 2019 WL 1004152, at *12 (S.D.NY. Feb. 28, 2019) ("Since the Court need only sustain Plaintiff's *Monell* claim on a single theory of liability, it need not address the merits [of] alternative theories...such as failure to train/supervise"); *Knox* v. *Union Twp. Bd. of Educ.*, 2015 WL 769930, at *11 (D.N.J. Feb. 23, 2015) (declining to rule on "alternate theories" supporting claim at motion-to-dismiss stage as "discovery will not vary substantially depending on whether they are in or out of the case" and they may "be addressed on summary judgment"); cf. Fed. R. Civ. P. 8(d)(2) (If a party alleges alternate theories, "the pleading is sufficient if any one of them is sufficient.").

Nevertheless, the allegations in Plaintiffs' FAC more than amply make out municipal liability under a failure to train theory. See FAC ¶¶ 74-92. The City's claim that the FAC does not

plead facts to support the City's deliberate indifference is contradicted by the allegations in the FAC. *See*, *e.g.*, *In re Summer 2020 Demonstrations*, 2021 U.S. Dist. LEXIS 128437, at *33-34 (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007), in turn quoting *Walker*, 974 F.2d at 297). These facts are also sufficient to plead deliberate indifference under a single-incident theory pursuant to *City of Canton* v. *Harris*, 489 U.S. 378 (1989) and its progeny.

Lastly, by implementing subsequent remedial changes, the City has essentially admitted that their policy of using tear gas, pepper balls and other disorder control tactics against protesters was unlawful. *See* Gino Fanelli and David Andreatta, *City makes sweeping changes to how police respond to protests*, CITY (Apr. 26. 2022), https://www.rochestercitynewspaper.com/rochester/city-makes-sweeping-changes-to-how-police-respond-to-protests/Content?oid=14552707.

## III.   PLAINTIFF'S THIRD CLAIM FOR RELIEF IS PROPERLY PLED UNDER TWO THEORIES—FIRST AMENDMENT RETALIATION AND VIEWPOINT DISCRIMINATION (Responding to Point I of the City's Brief)

### A.   Plaintiff's First Amendment Retaliation Claim is Well Pled.

Again, the City does not tailor the arguments to the facts of this case. Instead, the City ignores the numerous allegations in the FAC that support Plaintiff's First Amendment Retaliation claim, including the video incorporated at paragraph 52 (https://www.instagram.com/p/CEzSnUTD_1h/) and other instances where Ms. Staab was standing alone and recording police activity when she was shot with pepper balls. See e.g., FAC ¶ 40.

The City does not cite any caselaw to support their claim that Ms. Staab's First Amendment Retaliation claim is somehow not adequately pled. "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's

actions caused him some injury." *Dorsett v. Cnty. of Nassau,* 732 F.3d 157, 160 (2d Cir. 2013). In *Dorsett*, the Circuit clarified that "[c]hilled speech is not the *sine qua non* of a First Amendment claim"; rather, Plaintiffs may show *"either* that [their] speech has been adversely affected by the government retaliation or that [they] ha[ve] suffered some other concrete harm." *Id.* (emphasis in original). Moreover, as Judge Larimer held in *Colon* v. *City of Rochester*, allegations that law enforcement officers used force against a plaintiff to retaliate against them and/or to stop or prevent them from recording police activity is sufficient to make out a First Amendment retaliation claim. 419 F. Supp. 3d 586, 602 (W.D.N.Y. 2019). Because the FAC adequately pleads all these elements, the City's request to dismiss this claim should be denied.

Instead of citing caselaw about First Amendment Retaliation, the City again sloppily copied and pasted the paragraph on page 3 of their brief that begins with "The First Amendment does not require that protesters …" and ends with the Citation to "*Cent. Park Sightseeing LLC v New Yorkers for Clean, Livable & Safe Sts., Inc*., 157 AD3d 28, 35 (1st Dept. 2017)" directly from page 19 of their brief in *Hall*. As demonstrated in Hall, the cases cited in this paragraph are irrelevant to the facts of the police actions in Rochester, and have nothing to do with Ms. Staab's First Amendment Retaliation claim in this case.

Essentially, the City makes the untenable argument that Ms. Staab and other protesters lacked the First Amendment right to protest in the streets and sidewalks of downtown Rochester. Notably, when the police attacked Ms. Staab on September 4, 2020 shortly after 10:43 p.m., she was present with other protesters on the Court Street Bridge, which had been closed by law enforcement to vehicular traffic. FAC ¶¶ 26–37. Similarly, the following night, on September 5, 2020, when the police used force against Ms. Staab shortly after 10:30 p.m., she was standing on

the sidewalk at first, and later in the street, near the intersection of Broad Street and Exchange Blvd., which again had been closed by law enforcement to vehicular traffic. *Id*. ¶¶ 43-55.

The Supreme Court has "repeatedly referred to public streets as the archetype of a traditional public forum." *Frisby* v. *Schultz*, 487 U.S. 474, 480 (1988). Indeed,

> "[P]ublic ways and sidewalks … occupy a special position in terms of First Amendment protection because of their historic role as sites for discussion and debate. These places—which we have labeled 'traditional public fora'—have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."

*McCullen* v. *Coakley*, 573 U.S. 464, 501 (2014) (internal citations and quotations omitted). Plaintiff were protesting an issue of pressing public concern: police killings of unarmed Black citizens. Organized political protest is a form of "classically political speech." *Boos* v. *Barry*, 485 U.S. 312, 318 (1988). "[T]he First Amendment safeguards an individual's right to participate in the public debate through political expression and political association." *McCutcheon* v. *Fed. Election Com'n*, 572 U.S. 185, 203 (2014). That safeguard "reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id*. (internal citations omitted).

For that reason, "speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick* v. *Myers*, 461 U.S. 138, 145 (1983) (quoting *NAACP* v. *Claiborne Hardware Co*., 458 U.S. 886, 913 (1982) (internal quotations and citation omitted)). Political speech, especially that involving controversial issues, is "the essence of First Amendment expression." *McIntyre* v. *Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995). That protection extends to assembly. "Effective advocacy of both public and

private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP* v. *Alabama*, 357 U.S. 449, 460 (1958).

"Restrictions on speech in traditional or designated public fora receive strict scrutiny, which means they must be 'necessary to serve a compelling state interest' and 'narrowly drawn to achieve that interest.'" *Brindley* v. *City of Memphis*, 934 F.3d 461, 467 (6th Cir. 2019) (internal citations omitted). As Plaintiffs pled in the FAC, Plaintiffs exercised their right on public fora: Rochester streets, often right outside the PSB, City Hall and the courthouse.

In cordoning off traffic to permit the demonstrators to protests, Defendants decided to honor the public forums of the streets and sidewalks where the peaceful protests occurred. Defendants cannot turn around and claim they had the right brutally attack Ms. Staab and everyone who was in the roadway protesting, especially when no clear dispersal orders were issued. *See Vodak* v. *City of Chicago*, 639 F.3d 738, 746-47 (7th Cir. 2011) ("the Fourth Amendment does not permit the police to say to a person go ahead and march and then, five minutes later, having revoked the permission for the march without notice to anyone, arrest the person for having marched without police permission. This would be 'an indefensible sort of entrapment by the State'" (*quoting Cox* v. *Louisiana*, 379 U.S. 536, 571 (1965)).

The allegations in the FAC are more than enough to make out a First Amendment retaliation claim, and the City has not and cannot demonstrate that that their actions in using grossly excessive and unnecessary force against Ms. Staab and other protesters was "necessary to serve a compelling state interest" and "narrowly drawn to achieve that interest."

**B.      The FAC Pleads That Defendants' Response to the Protests Was More Violent Because of the Message They Were Expressing and Thus States First Amendment Viewpoint Discrimination Claim.**

The entire thrust of Ms. Staab's First Amendment Claims is that the vicious treatment of Plaintiff and other protesters was motivated by animus to their message and efforts to secure equal rights for Black and brown people. FAC ¶¶ 15–16, 62-64, 175.

Government "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "Viewpoint discrimination is a 'subset or particular instance of the more general phenomenon of content discrimination,' in which 'the government targets not subject matter but particular views taken by speakers on a subject.'" *Make the Rd. by Walking, Inc.* v. *Turner*, 378 F.3d 133, 150 (2d Cir. 2004) (citation omitted) (quoting *Rosenberger*, 515 U.S. at 829, 831). The government discriminates against viewpoints when it disfavors certain speech because of "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829. "[T]he Government's disapproval of a subset of messages it finds offensive … is the essence of viewpoint discrimination." *Matal* v. *Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J. concurring).

The FAC clearly pleads that a motivating factor for law enforcement's extreme and excessive use of force against Ms. Staab and other protesters was the message and tone of the peaceful protestors against sincerely and reasonably perceived systemic racism in the police force. FAC ¶¶ 15–16, 62-64, 175.

Defendants' response to the protesters cannot be explained by any other motivation. As in *Black Lives Matter Seattle-King Cty.*, "[t]he use of indiscriminate weapons against all protesters— not just the violent ones—supports the inference that SPD's actions were substantially motivated by Plaintiffs' protected First Amendment activity." 466 F.Supp 3d at 1214; *see also Don't Shoot Portland*, 465 F.Supp.3d 1150, 1156 (D. Or. 2020) ("These incidents demonstrate that preventing

criminal activity near the Justice Center was not the sole purpose of PPB's use of force. Instead, officers may have been substantially motivated by an intent to interfere with Plaintiffs' constitutionally protected expression.").

## IV.   THE CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FAILURE TO INTERVENE CLAIM IS MERITLESS, AND SO THE FOURTH CLAIM FOR RELIEF MUST PROCEED TO DISCOVERY.

The City's motion to dismiss the failure to intervene claim must be denied because they ignore the facts pled in the FAC.

The FAC pleads that Plaintiff was harmed by RPD officers and other law enforcement officers in different ways at different incidents on two different days. The actions of some of the RPD officers at one or more incidents may constitute direct unlawful actions that caused Plaintiff's constitutional deprivations, while other officers stood idly by and failed to stop and/or prevent their fellow officers from harming Plaintiff—which is all that is necessary to make out a failure to intervene claim.

Moreover, the failure to intervene claim is otherwise adequately pled. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson* v. *Branen*, 17 F.3d 552, 557 (2nd Cir. 1994). An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reason to know: (1) that excessive force was being used; (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring. *Yang* v. *Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Thus, the City's motion to dismiss the failure to intervene claim must be denied.

V.  **THE CITY DOES NOT MOVE TO DISMISS THE NEGLIGENT PLANNING CLAIM—THE EIGHTH CLAIM FOR RELIEF—WHICH IS ADEQUATELY PLED UNDER** *FERREIRA* **V.** *CITY OF BINGHAMTON***, 2022 NY SLIP OP 01953 (MAR. 23, 2022).**

The City does not move to dismiss the Eighth Claim for Relief, and so any argument as to this claim has been waived and cannot be raised in reply.

In *Ferreira* v. *City of Binghamton*, the Court of Appeals held that where law enforcement takes control of a dangerous situation that they affirmatively created, the municipality owes the plaintiff a special duty.  2022 NY Slip Op 01953 at *5-6 (Mar. 23, 2022).

In *Ferreira*, the Court expanded the reach of the third of the three methods of proving "special duty". Under New York case law, there are three ways to establish a "special duty":

1) The plaintiff belonged to a class for whose benefit a statute was enacted;

2) That the government worker formed a "special relationship" with the plaintiff; and

3) **The municipality took positive control of a known and dangerous safety condition.**

*Applewhite v Accuhealth, Inc.*, 995 N.E.2d 131, 135 (2013)

In *Ferreira*, the Court found that plaintiff had established a special duty under the "took positive control of a known and dangerous safety condition" method. *Id*. The Court relied on one of the few Court of Appeals cases that has addressed that method: *Smullen* v *City of New York*, 28 NY2d 66 (1971). There, a municipal inspector on a worksite informed the decedent that a trench did not need to be shored just before it collapsed, killing the decedent. The inspector was the only person in authority then present. The Court found that a special duty was established because the inspector took positive action in assuming direction and control over the dangerous situation.

Notably, the Court apparently adopted the argument of *amici* New York County Lawyers Association and National Police Accountability Project, that:

> "this Court should find that there is a special duty here because of the dangerous situation the officers, and the City, created. This raid is an example of a municipality "assum[ing] positive direction and control in the face of a known, blatant and dangerous safety violation" (*McLean v City of New York*, 12 N.Y.3d 194, 199 [2009]). This Court has found municipal liability under the special duty rule when a municipal agent had control over "an 'inherently dangerous' instrumentality which is in the same class as an explosive substance, inflammable material, a live electric wire or a spring gun" (*Smullen v City of New York*, 28 N.Y.2d 66, 71 [1971]). In this case, as in *Smullen*, municipal officials were physically present at the scene, were aware of that inherent danger, and acted positively in assuming direction and control at the accident site (in *Smullen*, by representing that an area was safe to enter, and in the instant case by affirmatively creating a dangerous situation through their negligent planning). Indeed, here, *Ferreira* was among a limited class of people for whom the City assumed a duty in executing the "no-knock" warrant."

(Lauren Bonds, Robert Rickner and Elliot Shields, Amicus Brief of the New York County Lawyers Association and National Police Accountability Project p. 27-28, *Ferreira* v. *City of Binghamton*, CTQ 2020-00007, available at: https://www.nycla.org/pdf/FerreiravBinghampton-NYCLA-amicus-amicusbrf.pdf)[3]

The facts here fit squarely within the holding of *Ferreira*. The FAC pleads that the City and RPD, acting in concert with the County and BAXTER, affirmatively created a "dangerous situation" by negligently planning the protest response. Specifically, despite having months to plan for largescale protests when the video of Daniel Prude being killed by RPD officers was finally publicly released, the City failed to implement an appropriate protest response plan that respected the First Amendment rights of protesters. FAC ¶¶ 21, 64. Instead, City policymakers created a dangerous situation by arming law enforcement officers with military-grade equipment, including tear gas and pepper spray, 40 millimeter blunt-impact projectiles, pepper balls, flash-bang grenades and other supposedly "less-than-lethal" munitions. *See e.g.,* FAC ¶¶ 64, 71. The City and RPD

---

[3] Notably, the *Smullen* argument was not advanced by the Plaintiff in *Ferreira*.

further compounded the dangerous situation by failing to appropriately train RPD officers in how to use these weapons, and instead permitting them to indiscriminately fire these weapons into crowds of protesters and to aim at protesters heads. The City has essentially admitted that it was negligent to arm its officers with these weapons and permit them to use these tactics, as it recently made sweeping changes to its protest response policies. See Gino Fanelli and David Andreatta, City makes sweeping changes to how police respond to protests, CITY (Apr. 26. 2022), https://www.rochestercitynewspaper.com/rochester/city-makes-sweeping-changes-to-how-police-respond-to-protests/Content?oid=14552707.

The RPD and Sheriff's Deputies "affirmatively took control" of the "dangerous situation" they had created by leading hundreds of protesters onto the Court Street Bridge on September 4, 2020 and to the intersection of Broad Street and Exchange Blvd. on September 5, 2020, which had closed to vehicular traffic by law enforcement—kettling or trapping Plaintiff and hundreds of other protesters in confined spaces—then attacking them with chemical weapons and other "less lethal" weapons, and then rushing at them and brutally attacking them with fists and batons. See, e.g., FAC ¶¶ 52.

The City and RPD were in the best position to ensure that Plaintiff and other protester's rights were not violated—they simply had to implement a proper protest response plan that respected protesters' First Amendment Rights and did not instruct officers to use extreme and unnecessary force against protesters. The City and RPD had months, from at least June 4, 2020 to September 2, 20202, to prepare for the protests, and the FAC pleads that they utterly failed to prepare for how to safely and lawfully police the protests. *See, e.g.,* Id. ¶¶ 40-64.

Thus, Plaintiff has adequately pled that the County owed Plaintiff and other protesters a special duty under *Ferreira*, and that its breach of that duty caused Plaintiff's injuries. For these reasons, the City's motion to dismiss the Negligent Planning claim should be denied.

## VI. THE NEGLIGENCE CLAIM AGAINST THE INDIVIDUAL OFFICERS—THE ELEVENTH CLAIM FOR RELIEF—IS ADEQUATELY PLED (Responding to Point IV of the City's Brief)

The City Defendants' argument that the negligence claim must be dismissed against the individual officers because "Plaintiff cannot sue for the intentional torts of assault and battery, while also suing for negligence as these causes of action are mutually exclusive" is meritless. City MOL p. 7. Both the Rule 8(d)(2) and (c) of the Federal Rules of Civil Procedure and over 50 years of clearly established caselaw from the New York State Court of Appeals permit Plaintiff to plead that the same actions by police officers may constitute negligence or an intentional tort. Thus, the City's motion to dismiss the negligence claim should be denied.

Rule 8(b)(2) explicitly permits pleading in the alternative: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Moreover, Rule 8(c) permits pleading inconsistent claims: "A party may state as many separate claims or defenses as it has, regardless of consistency."

Second, as argued above with respect to the failure to intervene claim, the FAC pleads that different law enforcement officers harmed Plaintiff in different ways on the nights in question, by indiscriminately firing chemical weapons into the crowds of protesters, and also by specifically targeting her with pepper balls and other chemical weapons because she was filming them. Thus, some actions of law enforcement officers constituted negligence, while the actions of other law enforcement officers constituted assault, battery and excessive force.

Third, over sixty years of clearly established Court of Appeals caselaw permits plaintiffs to plead that the same actions of police officers may constitute either negligence or assault and

battery. *Flamer* v. *City of Yonkers*, 309 N.Y. 114, 119 (1955). In *Flamur*, the Court explained that where there is a material factual dispute as to the officers' intent when their use of force harmed the plaintiff, it is plaintiff's right to have these material factual issues decided by the jury. *Id*. at 119–20.

The cases cited by the City Defendants are consistent with the Court of Appeals holding in *Flamer* and actually support Plaintiff's argument that the Eleventh Cause of Action should not be dismissed. For example, in the first case cited by the City Defendants, *Mazzaferro* v. *Albany Motel Enterprises, Inc.,* 127 A.D.2d 374 (3rd Dept. 1987), the trial court properly permitted plaintiff to proceed to trial on claims that the use of force against him constituted both assault and battery and negligence; but properly granted defendants motion for a directed verdict dismissing the negligence cause of action because, "Plaintiff's proof admitted of no other inference than that defendants' employees' offensive touching of plaintiff, if it occurred at all, was intentional and not inadvertent." *Id*. at 375.

Similarly, the second case cited by the City Defendants, *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351 (2d Cir. 1993), demonstrates that Plaintiff is entitled to proceed to discovery on the negligence claim. In that case, the Second Circuit held that the trial court properly granted summary judgment on the plaintiff's negligence claim, because the evidence adduced in discovery clearly demonstrated that the defendant's actions were intentional. *Id*. at 354. ("[Plaintiff] stated in his deposition that The Tunnel bouncer "grabbed" him around the "arms and neck" and "started to strike me in my face," hitting him three times around the forehead, eye and cheek. Under no view does this constitute negligence.")

Moreover, New York Courts have consistently held that, "[i]t is settled that negligence cases by their very nature do not lend themselves to summary dismissal since often, even if all

parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination." *McCummings* v. *New York City Transit Auth.*, 81 N.Y.2d 923, 926 (1993) (internal citations and quotations omitted). Often that jury question is whether law enforcement actions were consistent with good and accepted police practices or departmental training; because officers violated his training, departmental policies, or good and accepted police practices, then he is not entitled to immunity. *Malay v. City of Syracuse*, 151 A.D. 3d 1624 (4th Dept. 2017); *Lubecki v. City of New York*, 304 Ad2d 224 (1st Dept. 2003). Here, Discovery of the training received by defendants and the RPD's policies are necessary to the determination of whether they are entitled to discretionary immunity. The City's motion to dismiss the negligence claim should be denied.

Thus, Defendants' argument that Plaintiff cannot plead claims for both assault and battery and negligence is meritless, because doing so is explicitly permitted by Rule 8(b)(2) and (c) and New York law.

## <u>CONCLUSION</u>

The City's partial motion to dismiss should be denied in its entirety. Not only do the legal arguments lack merit, but the motion is sloppy, obviously copied and pasted from motions filed in other cases, and not tailored to the facts pled in the FAC.

For all of these reasons, the City's partial motion to dismiss should be denied in its entirety.

Dated: May 4, 2022            Respectfully Submitted,
      New York, New York

BY:       \_\_\_\_\_~//s//~_____
          Elliot Dolby Shields
          Roth & Roth, LLP
          Co-Counsel for Plaintiff
          192 Lexington Avenue, Suite 802
          New York, New York 10016
          Phone: (212) 425 1020